# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs January 11, 2011

## STATE OF TENNESSEE v. CHRISTOPHER TERRELL ROBINSON

**Direct Appeal from the Circuit Court for Bedford County**
**Nos. 16875 & 16878      Lee Russell, Judge**

---

**No. M2010-01183-CCA-R3-CD - Filed April 29, 2011**

---

A Bedford County jury convicted the Defendant, Christopher Terrell Robinson, of violating the Habitual Motor Vehicle Offender ("HMVO") Act, evading arrest, and violating the light law.  Subsequently, the Defendant also pled guilty to felony failure to appear for not appearing at his original court date.  For all the Defendant's convictions, the trial court sentenced him to an effective sentence of twelve years, to be served as a Range II offender at 60%.  On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his conviction for violating the HMVO Act; and (2) his sentence is excessive because the trial court inappropriately ordered his sentences to run consecutively.  After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Gregory D. Smith (on appeal), Clarksville, Tennessee, and Andrew Jackson Dearing, III, and Catherine H. Hickerson (at trial and guilty plea hearing), Shelbyville, Tennessee for the Appellant, Christopher Terrell Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Michel Bottoms, District Attorney General; Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the police stop of the Defendant for failure to activate his

headlights. The Defendant was indicted for driving on May 23, 2008, after being declared an HMVO, evading arrest, and driving without proper lighting because he was driving without his headlights activated. The Defendant was also indicted for failing to appear in General Sessions Court on July 22, 2008, at a proceeding on the aforementioned charges.

## A. Trial

The Defendant proceeded to trial on the charges of violation of the HMVO Act, evading arrest, and driving without proper lighting. At his trial, the parties presented the following evidence: Darrell Birdsong, an officer with the Shelbyville Police Department, testified that on May 23, 2008, he was working the night shift as a patrolman when he observed a vehicle traveling toward him without any headlights activated at around 10:53 p.m. The officer flashed his own headlights at the driver, attempting to get the driver to illuminate his headlights, but the driver never turned on his lights. The officer activated his emergency blue lights to initiate a stop of this vehicle, and the driver did not "act like [he] wanted to stop." The officer blocked the path of the vehicle, and the vehicle came to a stop.

The officer testified that, once the car was stopped, the driver "immediately jumped" out of the car. The officer activated the video camera in his patrol car and ordered the driver, whom he identified as the Defendant, to get back into the Defendant's vehicle. After noting that a passenger was in the Defendant's car, the officer asked the Defendant for his driver's license, and the Defendant told the officer it was at his house, which was located nearby. The officer asked the Defendant to come toward the officer's car to discuss the matter, and the Defendant began running in the opposite direction. The officer said he chased the Defendant for approximately three minutes, during which he radioed the police dispatcher to enlist assistance. The Defendant ultimately eluded the officer, who then returned to the Defendant's car and spoke with the Defendant's passenger, who identified the Defendant only as "Chris."

Officer Birdsong, along with other officers who had arrived at the scene, secured the car the Defendant was driving. The officers discovered the car was registered to "John Hardeson," and, because the driver of the car had evaded police, the officers seized the car. Officer Birdson said he later learned the Defendant had been declared an HMVO, and, as such, the Defendant would have been immediately arrested had he not run from the police.

Officer Birdson said that, when he arrived for his shift the following day, another officer informed him that he had interviewed John Hardeson. As a result of the information obtained during this interview, the details of which were relayed to Officer Birdson, Officer Birdson retrieved from police files photographs of all men named "Christopher Robinson." From these photographs, he identified a picture of the Defendant as the man whom he had stopped the previous evening.

The officer testified he went to the trailer park where he thought the Defendant resided. He did not locate the Defendant, but he told other residents of the trailer park that he was looking for the Defendant. On May 25, 2008, he was assisting another officer responding to an unrelated call in the same trailer park where he thought the Defendant resided. While he was there, someone approached him and identified the trailer in which the Defendant was located. The officer searched the trailer with the owner's consent and upon finding the Defendant hiding in a closet, placed him under arrest.

Officer Josh Leverette, with the City of Shelbyville Police Department, testified he responded to Officer Birdson's request for back-up after the Defendant fled after the traffic stop. When he arrived at the scene, he saw Officer Birdson chasing someone and another individual sitting in the passenger seat of the car that Officer Birdson had stopped. Officer Leverette asked the passenger to exit the car and patted the passenger down to ensure the officer's safety. When Officer Birdson returned alone, the two officers attempted to locate the driver of the car.

Officer Leverette testified he was with Officer Birdson two days after this incident when Officer Birdson received information that the Defendant was located in a trailer in the neighborhood they were patrolling. The two officers went to the trailer and apprehended the Defendant.

James Wilkerson, a sergeant with the Shelbyville Police Department, testified that on May 24, 2008, he received a call from a man named John Hardeson who reported that his car had been used without his authorization. Hardeson described the vehicle, and Hardeson's description matched the description of the vehicle the Defendant was driving when Officer Birdson stopped him. Hardeson provided Sergeant Wilkerson the name of the person he had last seen driving his car, and the sergeant relayed that name to Officer Birdson. On cross-examination, the officer said he did not see the Defendant on the night Officer Birdson stopped the Defendant.

Based upon this evidence, the jury convicted the Defendant of violating the Habitual Motor Vehicle Offender ("HMVO") Act, evading arrest, and a violation of the light law.

**B. Guilty Plea Hearing**

After the Defendant was convicted by the jury on the aforementioned charges, he sought to enter a guilty plea to the charge of felony failure to appear. At the plea submission hearing, the following occurred: The State informed the trial court that, in this case, the Defendant had been arrested for violation of the HMVO Act, evading arrest, and violation of the light law, charges for which a jury subsequently convicted him, and that he failed to appear in General

Sessions Court on July 22, 2008, at a scheduled hearing on these charges.

Upon the trial court's questioning, the Defendant stated that he was aware of his July 22, 2008, court date and that he did not appear. He also said he understood that the failure to appear charge was a felony because the charge for which he failed to appear was also a felony. He said that he had discussed his culpability with his attorney and that the two had also discussed his potential sentence. The Defendant agreed that he wanted to enter a guilty plea and allow the trial court to sentence him.

The trial court then entered the Defendant's guilty plea to the charge of felony failure to appear.

### C. Sentencing Hearing

The trial court held one sentencing hearing to sentence the Defendant for all of the convictions in this case. The trial court reviewed the presentence report and stated that, because the Defendant appeared to be a Career Offender, he would be required to serve 60% of his sentences. Further, the trial court noted that the Defendant's sentence for his conviction for failing to appear, which occurred while the Defendant was on bond for his other charges, was required to run consecutively to his sentences for his other convictions.

The trial court stated that the Defendant was being sentenced for multiple misdemeanors and two Class E felonies. The trial court sentenced the Defendant to six years for each of the Class E felony convictions. It then ordered that the misdemeanor sentences, which were each eleven months and twenty-nine days, be served concurrently to the Class E felony conviction for violating the HMVO statute. Then, because the Defendant was on bond when he failed to appear, the trial court ordered that the Defendant's sentence for failing to appear run consecutively to his sentence for violating the HMVO statute, for an effective sentence of twelve years at 60%. The trial court then denied the Defendant alternative sentencing.

### II. Analysis

On appeal, the Defendant contends that the evidence was insufficient to sustain his conviction for violating the HMVO statute and that his sentence was excessive because the trial court "inappropriately" ordered mandatory consecutive sentencing.

### A. Sufficiency of Evidence

The Defendant contends the evidence is insufficient to sustain his conviction for violating the HMVO statute because, while the order declaring him an habitual motor vehicle

offender, dated June 7, 1999, is included in the record on appeal,[1] it was never entered into evidence. Further, the Defendant contends that the State failed to prove that this order, more than ten years old at the time of the trial, was still in effect. Without this evidence, the Defendant asserts, the State did not prove an essential element of the offense beyond a reasonable doubt. The State counters that the Defendant's status as an habitual motor vehicle offender was proven by Officer Birdson's affirmative response that he had confirmed, through the Defendant's driver's license, that the Defendant was a habitual motor vehicle offender. Further, the State notes that the Defendant failed to object to and did not contest Officer Birdson's testimony.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). A conviction may be based entirely on circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W .2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury

---

[1]It appears from the record that the order was entered as an attachment to the Defendant's warrant for failing to appear in General Sessions Court to respond to the charges in this case.

see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant was convicted of violating the HMVO law. An individual violates the HMVO act by operating "any motor vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect." T.C.A. § 55-10-616(a).

This Court has previously upheld a jury's conviction of a defendant violating the HMVO statute when the order declaring the defendant an HMVO was not entered into evidence. In *State v. Kenneth Clay Davis*, the defendant was convicted of, among other things, violating the HMVO law. No. E2006-01459-CCA-R3-CD, 2007 WL 1259206, at *1 (Tenn. Crim. App., at Knoxville, Apr. 30, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007). The evidence supporting this conviction included the arresting officer's testimony that a check of the defendant's driver's license number revealed that the defendant was an HMVO. *Id*. The defendant also testified and admitted that he was an HMVO. *Id*. Based upon this evidence, this Court affirmed the convictions, holding that there was sufficient evidence to support them. *Id*. at *3. In *State v. Roy Gene Russom*, the defendant's community corrections officer saw him driving a motor vehicle, and she was aware that he had been declared an HMVO. As such, she stopped him with the aid of law enforcement officers. No W2006-01415-CCA-R3-CD, 2007 WL 1215054, at *1 (Tenn. Crim. App., at Jackson, Apr. 24, 2007), *no Tenn. R. App. P. 11 application filed*. Those law enforcement officers testified that they had obtained a certified copy of the defendant's driving history, which verified that his driver's license had been revoked and that he had been declared an HMVO. *Id*. The defendant was convicted of violating the HMVO law, and this Court held that sufficient evidence existed to support that conviction. *Id*. at *2. In so doing, we stated, "The record clearly established that the Appellant had been declared a HMVO on December 10, 1981." *Id*.

In both of the two aforementioned cases, the evidence proving that those defendants

were habitual motor vehicle offenders was stronger than in the case presently before us. We are, therefore, less inclined to affirm this Defendant's conviction. Considering, however, that we review the evidence supporting the conviction in the light most favorable to the State and that the Defendant did not object to or contest Officer Birdson's testimony that he was an HMVO, we conclude that there is sufficient evidence to sustain the Defendant's conviction. The evidence supporting the Defendant's conviction proves that the Defendant drove a car on the night of May 23, 2008. After being stopped by Officer Birdson, the Defendant evaded arrest. The officer later learned from other sources the Defendant's name. He pulled the driving records of all people having the Defendant's name, and, from these, he identified the Defendant's photograph and driver's license. The officer then learned that the Defendant had previously been declared an HMVO. The order declaring the Defendant an HMVO is included in the appellate record but was not presented to the jury at trial. We note that it is a better practice for the State to offer into evidence a certified copy of the order declaring a defendant an HMVO. *See e.g., State v. Charles Mandel Moss*, No. E2008-02632-CCA-R3-CD, 2010 WL 1957095, at *1 (Tenn. Crim. App., at Knoxville, May 17, 2010) (offering the testimony of an employee of the criminal court clerk's office about the defendant's status as an HMVO), *no Tenn. R. App. P. 11 application filed*; *State v. Eric Goldman*, No. M2006-00134-CCA-R3-CD, 2006 WL 3831240, at *2 (Tenn. Crim. App., at Nashville, Dec. 29, 2006) (entering a certified copy of the order declaring the defendant an HMVO), *no Tenn. R. Ap. P. 11 application filed*. We conclude that, while the introduction of the order declaring the Defendant an HMVO would have greatly strengthened the State's case, the evidence sufficiently supports the conviction. The Defendant is not entitled to relief on this issue.

## B. Sentencing

The Defendant next contends that the trial court erred when it ordered mandatory consecutive sentencing because the Defendant was on bond for other charges when he failed to appear for court. The Defendant premises his argument on the assumption that this Court will find that the evidence is not sufficient to sustain his conviction for violating the HMVO law. Were we to so conclude, the Defendant would be convicted of only one felony, and he seeks for this Court to run the remaining misdemeanor sentences concurrently to his sentence for felony failure to appear.

When a defendant challenges the length, range, or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due

consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, T.C.A. section 40-35-103 (2009), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210(b) (2009); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103(5) (2009).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2009).

If a defendant seeks probation, then that defendant bears the burden of "establishing [his] suitability." T.C.A. § 40-35-303(b) (2009). As the Sentencing Commission points out, "even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303 (2009), Sentencing Comm'n Cmts.

If an offender meets one or more statutory criteria in Tennessee Code Annotated section 40-35-115, whether or not he should be sentenced consecutively or concurrently is within the sound discretion of the trial court. T.C.A. § 40-20-111(a) (2009); *State v. James*,

688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). The judge does not have discretion, however, when an offender commits a felony while on bail and is convicted of both offenses:

> In any case in which a defendant commits a felony while the defendant was released on bail in accordance with the provisions of chapter 11, part 1 of this title, and the defendant is convicted of both offenses, the trial judge shall not have discretion as to whether the sentences shall run concurrently or cumulatively, but shall order that the sentences be served cumulatively.

T.C.A. § 40-20-111(b).

In the case under submission, we have affirmed the Defendant's conviction for violating the HMVO law. Further, he was on bail for this offense when he committed the offense of felony failure to appear, a crime for which he was subsequently convicted. The provisions of Tennessee Code Annotated section 40-20-111(b) are therefore applicable to this case, and the trial court correctly held that he was required to order the Defendant's sentences to run consecutively. As such, the Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude the record contains sufficient evidence to support the Defendant's convictions and that the trial court properly sentenced him. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE